# William Dean and William W. Janney *vs.* Henry M. Adler, and others.

## *Construction of a Power in a Deed of Trust to Sell and Re-invest.*

A being seized of a large real estate, conveyed the same in trust for the sole and separate use of B, his wife, during her life, with full power and authority, when she might deem it expedient so to do, and for a fair and valuable consideration to sell, assign and convey any part of said estate, without the concurrence of her husband or of the trustee; provided, however, the proceeds of sale should be forthwith securely reinvested in either real or leasehold property, to be held subject to the trusts and limitations expressed in the deed of trust; and from and immediately after the death of B, in trust for the use and benefit of the two children of A and B, then living, and of such child or children as they might thereafter have, equally, share and share alike, and for the use and behoof of the heirs and representatives of said children forever; the shares or interests of the daughter or daughters of A and B, to be held for her or their sole and separate use and benefit, free from the control of any husband they might have. The deed of trust reserved a power of revocation to the grantor, but it was never exercised. A died leaving B, his widow, and two children surviving him. Subsequently B, in conjunction with the trustee, leased a lot of ground, part of the trust estate, to C, for ninety-nine years, renewable forever, and covenanted in said lease that they would at any time thereafter, during the continuance of the demise, at the request of C, and on his paying to B, the sum of $1,000 and all arrearages of rent thereunder, with a proportion *pro rata* of the accruing rent to the time of such payment, execute a deed in fee of said lot. C subsequently assigned his interest and estate under the lease to D. The trustee died. B also died leaving a last will, by which she appointed one of her children and the husband of the other, her executors. Upon a bill filed by C and D, against the executors and daughter of B, claiming a specific execution of the covenant to convey as contained in the lease, HELD:

That B, the *cestui que trust* for life, had no authority under the power conferred upon her in the deed of trust, to enter into the covenant contained in the lease, so as to bind her children, the *cestuis que trust* in remainder, after the expiration of her life estate and a specific execution of said covenant cannot be enforced.

APPEAL form the Circuit Court of Baltimore City.

On the 14th of October, 1851, William Floss being seized of a large real estate in the City of Baltimore, conveyed the same to Simon Gump in trust for the sole and separate use of Sarah, wife of the grantor, during her life, with full power and authority to the said Sarah when she might deem it expedient so to do, and for a fair and valuable consideration to sell, assign, transfer and convey any part of said estate, without the concurrence of her husband or of the said trustee; provided, however, the proceeds of sale should be forthwith securely re-invested in either real or leasehold property, to be held subject to the trusts and limitations expressed in said deed of trust; and from and immediately after the death of the said Sarah, in trust for the use and benefit as well of the two children then living, of the said William and Sarah, as of any child or children which they might thereafter have, equally, share and share alike, and for the use and behoof of the heirs and representatives of the said children forever; the shares or interests of the daughter or daughters of the said William and Sarah, to be held for her or their sole and separate use and benefit and in no wise subject to the control or disposal of their husbands, nor in any manner liable and bound for or by their debts, contracts or engagements. The deed also contained a power of revocation reserved to the grantor, which however was never exercised; he died leaving his widow Sarah and two children, viz: Simon and Helen J., the latter of whom in July, 1865, intermarried with the appellee, Henry M. Adler.

On the 1st of May, 1867, and after the death of the grantor, William Floss, Sarah, his wife, in conjunction with Simon Gump, the trustee, made a *lease* to the appellant, William W. Janney, of a lot of ground, part of the trust estate, for a term of ninety-nine years, at the yearly rent of $60; the lessee covenanting to improve the lot before the 1st of July, 1867, by the erection of a suitable dwelling house, similar to those in the vicinity. There was a covenant also in it by the trustee

and Sarah, that she would "warrant specially" the property thereby leased, and that at any time during the demise the said Simon Gump and Sarah, their heirs or assigns, on payment of a fine of ten dollars would execute to the lessee, his representatives or assigns, a new lease for another term of ninety-nine years, subject to the same rent, &c., and a further covenant that the said Simon Gump and Sarah should at any time or times thereafter during the continuance of the demise, at the request of the said William W. Janney, and on his paying to the said Sarah the sum of one thousand dollars, and all arrearages of rent thereunder, with a proportion pro rata of the accruing rent to the time of such payment, make and execute to the said William W. Janney a deed of conveyance in fee of the lot of ground therein described free from the rent thereby reserved and the covenants therein contained.

Janney subsequently *assigned* his estate and interest under the lease to the appellant, William Dean, for a consideration of two hundred dollars. Simon Gump died. In 1867, Sarah Floss also died, leaving a last will, by which she appointed as her executors Henry M. Adler and her son Simon Floss. On the 21st of June, 1867, the said Dean and Janney filed the bill in this case, alleging a tender by the former of one thousand dollars, with arrears of rent, to Henry M. Adler after the death of Sarah Floss, and claiming a specific execution of the covenant to convey the reversion contained in the lease given by Simon Gump and Sarah Floss. An injunction to restrain proceedings at law against either of the complainants because of Janney's breach of his covenant to build, was prayed, and the Court, (ALEXANDER, J.) granted it, *ex parte,* upon the usual terms. The defendants answered; evidence was taken by the complainants; and the Court (PINKNEY, J.) upon final hearing after having decided that Sarah Floss under the deed of trust had the power to lease the lot in question, delivered the following opinion as to whether she had the power to make the covenant in the lease, so as to bind her children to a specific performance of the same, after the expiration of her life estate:

"Upon this point, my opinion is still more clear that Mrs. Floss did not possess a power under the deed of trust to covenant " that at any time, on paying said Sarah one thousand dollars, and all rents accrued, the lessee should be entitled to, and the lessor should and would execute a deed in fee, conveying the reversion in the lot demised," so as to bind her children after the expiration of her life estate. This, I think, is evident, from even a casual reading of the deed of trust. She had the full power and authority to sell the property conveyed in trust, " when she should deem it expedient so to do;" but it is expressly provided, that " the proceeds of the sale so made shall be forthwith securely re-invested in either real or leasehold property." The power to sell, and the duty to re-invest, are indissolubly united. How, indeed, can it be said that a covenant to sell at any time, in a lease of ninety-nine years, was a proper execution of a power to sell and re-invest, in a tenant for life? It seems to me sufficient to state the proposition. I have examined all the cases cited by the learned counsel, and I have searched the books very carefully for authority, but neither the learned counsel nor my own independent researches, have made me acquainted with a single case that can, upon examination, be considered an authority in favor of the enforcement by a Court of Equity of this covenant against the defendants. The case that comes nearest to it, is *Shannon vs. Broadstreet* 1 *Sch. & Lef.*, 52, decided by LORD REDESDALE. In that case, there was a leasing power to the tenant for life, who made a contract for a lease pursuant to the power, and the lessee entered into possession, when the lessor died before executing a lease. It was held, that the agreement bound the remainderman; and the reason given by LORD REDESDALE was, that the power was given both for the benefit of the tenant for life and of all persons claiming after him; it was so held expressly upon the ground that it was in furtherance of the object of the power and for the benefit of the estate; that is to say, a power not only for the benefit of the life estate, but as well of that in remainder. It was

to carry out a defective execution of a power that the contract to lease was upheld; but in this case the vice is in the contract itself, which, in my opinion, was not within the scope of a power to sell and re-invest.

"There are other objections to the covenant in question, but it is unnecessary to consider them.

"My conclusion upon the case, is, that the injunction ought to be dissolved, and the bill dismissed with costs."

In accordance with this opinion, the Court on the 3d of January, 1868, passed a decree dismissing the bill with costs to the defendants. From this decree the present appeal was taken.

The cause was argued before BARTOL, C. J., GRASON, MILLER and ALVEY, J.

*Wm. Jessop Ward,* for the appellants:

Sarah Floss, the lessor, circuitously could have done, in the exercise of the power contained in the deed of trust, precisely what was done by her and Gump, trustee. *Wilson vs. Troup,* 2 *Cowen,* 201, 202; 1 *Story's Eq.,* sec. 169 *to* 172, *and note to p.* 168, 169, *and note* 4, *on p.* 191, *sec.* 169, *and of* 170, *p.* 194, 173 *and* 175; 2 *Sugden on Powers,* 479, 482; 1 *Equity Cases,* (29 *Victoria,*) 174.

By the lease she has given written, solemn evidence of her intention to execute said power, and did intend to execute and did execute the same, and for an adequate and a fair and valuable consideration, as required by the deed. 1 *Story's Eq.,* secs. 172, 174 *and* 174 *a; Reid vs. Shergold,* 10 *Vesey,* 373, 375, *(top page;)* 1 *Leading Cases in Equity,* 213, 219.

This act by her was acquiesced in by the trustee and by her husband, who had created said power, and this is deemed of weight by a Court of Equity. *Wilson vs. Troup,* 7 *Johns. Ch. Rep.,* 35.

Sarah Floss and the trustee Gump, covenanted to pass such an estate as the deed of trust authorized them or her alone

to pass, and which by this proceeding the appellants seek to have conveyed in due form. *Sergeson vs. Sealey*, 2 *Atkyns*, 414, 415; *Coventry vs. Coventry*, 2 *Peere Wms.*, 222, 230; 1 *Story's Eq.*, secs. 172, 173; *Shannon vs. Broadstreet*, 1 *Schoale & Lefroy*, 59, 62, 63; 1 *Leading Cases in Equity*, 215; 1 *Sugden on Powers*, 295, (top,) sec. 2.

The lease was a sale and an agreement to convey the whole interest of the lessors in the land. *Bosley, et al. vs. Bosley's Ex'x*, 14 *Howard*, (*S. C.*,) 396.

Having so covenanted, a Court of Equity would feel authorized to interpose on behalf of a meritorious applicant, viz; a purchaser for adequate, fair and valuable consideration; and the proof shows the consideration stipulated for by Sarah Floss to be such; and if defect there be, the Court will supply that defect, by granting the relief prayed and enforcing the performance of that covenant. 1 *Story's Eq.*, secs. 169, 171.

*Arthur W. Machen*, for the appellees:

The relief sought by the bill ought not to be granted. The power given by the deed of trust was a power of sale and re-investment—not a power of sale simply, but a power to sell for the purpose of re-investment, and, by the terms of the deed, expressly conditional upon re-investment. Such a power is not well exercised, unless *provision be made before the sale* for a re-investment. *Watts vs. Girdlestone*, 6 *Beavan*, 188; *Lewin on Trusts*, 417, 418; *Wormley vs. Wormley*, 8 *Wheat.*, 421.

The re-investment, as well as the sale, by the terms of the deed, can only be made by Sarah Floss. Neither during her lifetime, nor afterwards, is a similar power given to any other person. And in her hands it was indivisible. It was not competent for her to make a *sale* even, upon the terms that the purchase money should be paid to, or re-invested by another. She, and she alone, was to receive the money which, by her, was to be *forthwith* re-invested. The duty

of re-investment could no more be delegated than that of sale.

If, therefore, the covenant in question is to receive the construction contended for on the part of the appellants, and is to be read as contemplating a payment of the $1,000 at any time within ninety-nine years—after the death of Sarah Floss, as well as in her lifetime—it is impossible to reconcile it with the object of the power.

After the death of Sarah the equitable inheritance was limited to the children—the shares of daughters to be held for their sole and separate use. The parties in remainder were entitled to enjoy the specific property described in the deed, in the form it had at the date of the deed, and unaffected by any subsequent charges or encumbrances. They were to have this, or if any of it should be sold in Sarah Floss's lifetime, such real or leasehold property as the proceeds should be re-invested in.

The covenant in question, *read literally,* is reconcilable with the ability of the parties, and the circumstances of the case. It only provided that if the lessee should pay to Sarah Floss herself—consequently within her lifetime—the money agreed on, then in such case *she* (together with the trustee) would execute the conveyance. And inasmuch as, upon the literal construction, the agreement was one practically within the ability of the contracting party, while a wider construction involves a plain transgression of her power, it is more reasonable to take the words as they stand, and not to enlarge them. In short, a principle of construction which might be authorized were the instrument under consideration the covenant of an absolute owner, may not be appropriate or justifiable where the words are those of one who has no estate in the land, but is only the donee of a power. What Sarah Floss agreed to was no more than this, that if Janney—not Janney or his assigns, but Janney — chose to pay her the thousand dollars at any time while she lived, she would then exercise her power of sale, and convey the fee to him in consideration of that sum.

Under all the circumstances, and in view of the uncertainty as to what was really contemplated by the parties, and the impossibility of performance consistently with the provisions of the trust, the case is not one where a Court of Equity can be rightly called on to interfere and exercise its discretionary jurisdiction. *Harnett vs. Yielding*, 2 *Sch. & Lef.*, 548; *Symons vs. Symons*, 6 *Mad.*, 208; *Howard vs. Carpenter*, 11 *Md.*, 282, 284; *Lewin on Trusts*, 415, (*margin;*) *Ord vs. Noel*, 5 *Mad.*, 438; *Bridger vs. Rice*, 1 *Jac. & Walk.*, 74, 84.

MILLER, J., delivered the opinion of the Court.

The sole object of the bill in this case is to enforce as against the children of William Floss and Sarah, his wife, specific performance of a covenant contained in the lease of the 1st of May, 1857, from Sarah Floss and Gump, the trustee, to Janney.

Without deciding whether the power of sale and re-investment contained in the deed of trust of the 14th of October, 1851, embraced a power to lease the property or any part of it, we are clearly of opinion that Mrs. Floss, the *cestui que trust* for life, had no authority under the power conferred upon her in that deed, to enter into the covenant in question so as to bind these children, the *cestuis que trust* in remainder, after the expiration of her life estate. We fully concur in what is said by the Judge of the Circuit Court in his opinion upon this branch of the case, and for the reasons thus stated by him the decree dismissing the bill must be affirmed with costs.

*Decree affirmed.*

(Decided 17th February, 1869.)